UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ALLISON NILES,

                          Plaintiff,

-against-

1109-1113 MANHATTAN AVENUE PARTNERS,
LLC and SAN DIEGO LAUNDROMAT,

                          Defendants.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**

13-CV-5427 (NGG) (VMS)

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Allison Niles ("Plaintiff") brings this negligence action against Defendants 1109-1113 Manhattan Avenue Partners, LLC ("Defendant")[1] and San Diego Laundromat (the "Laundromat") to recover damages for personal injuries she sustained on February 18, 2013, when she was exiting the Laundromat and lost her footing on a wooden ramp. Defendant has moved for summary judgment. (Def.'s Not. of Mot. for Summ. J. ("Def.'s Mot.") (Dkt. 20).) For the reasons discussed below, Defendant's motion is DENIED.

I.     **BACKGROUND**

    A.     **Factual Background**

Except as otherwise noted, the following facts are undisputed. Where facts are in dispute, the court credits Plaintiff's version of the particular fact if supported by record evidence. Plaintiff is a resident of Delavan, Wisconsin. (Compl. (Dkt. 1) ¶ 10.) On February 18, 2013, at approximately 1:00 p.m., Plaintiff was involved in an accident as she was exiting the Laundromat on the corner of Manhattan Avenue and Clay Street in Brooklyn, New York. (Def.'s Rule 56.1(a) Statement ("Def.'s 56.1") (Dkt. 21) ¶ 2; Pl.'s Resp. to Rule 56.1(a)

---

[1] The Clerk of Court is respectfully directed to amend the case caption to the correct party name as indicated above.

1

Statement ("Pl.'s 56.1") (Dkt. 22) ¶ 2.) At the time of the accident, Defendant owned the property where the Laundromat was located and the accident occurred. (Def.'s 56.1 ¶ 11; Pl.'s 56.1 ¶ 11.) Just prior to the accident, Plaintiff had entered the Laundromat to pick up laundry that had been pre-washed and dried for her. (Def.'s 56.1 ¶¶ 2, 4; Pl.'s 56.1 ¶¶ 2, 4.) Plaintiff had been a patron of the Laundromat for approximately two years. (Def.'s 56.1 ¶ 2; Pl.'s 56.1 ¶ 2.) In front of the entrance/exit door to the Laundromat was a square, concrete stoop that was approximately four feet wide and extended a few feet from the door. (Def.'s 56.1 ¶ 3; Pl.'s 56.1 ¶ 3.) This "landing area" was situated between the sidewalk and the entrance/exit door to the Laundromat. (Def.'s 56.1 ¶ 3; Pl.'s 56.1 ¶ 3.)

Before the accident occurred, Plaintiff had entered the Laundromat and was inside for approximately ten minutes. (Def.'s 56.1 ¶ 4; Pl.'s 56.1 ¶ 4.) As Plaintiff was leaving the Laundromat carrying her bag of laundry in both arms and looking straight ahead, she attempted to step off the concrete landing. (Def.'s 56.1 ¶¶ 5-7; Pl.'s 56.1 ¶¶ 5-7.) She was unable to look down due to the large laundry bag she was carrying. (Def.'s 56.1 ¶ 6; Pl.'s 56.1 ¶ 6.) As she was attempting to step off the landing, the side of her right foot came into contact with the edge of a wooden ramp. (Def.'s 56.1 ¶ 7; Pl.'s 56.1 ¶ 7.) Her feet became "tangled" and she fell forward onto the sidewalk. (Def.'s 56.1 ¶ 7; Pl.'s 56.1 ¶ 7.) The ramp was a few feet long and two feet wide, and the top of the ramp was up against the step. (Def.'s 56.1 ¶ 8; Pl.'s 56.1 ¶ 8.) Plaintiff did not recall seeing the ramp prior to the accident, did not see anyone placing the ramp there, and did not see the ramp as she exited the Laundromat. (Def.'s 56.1 ¶¶ 6, 9; Pl.'s 56.1 ¶¶ 6, 9.) Plaintiff has alleged that she sustained "severe, permanent and serious injuries" as a result of the accident. (Compl. ¶ 18.)

## B. Procedural History

Plaintiff filed her Complaint on September 19, 2013, alleging a single cause of action for negligence with respect to the "improper, hazardous, dangerous, and defective condition" at the entrance/exit of the Laundromat that caused her to trip and fall. (Compl. ¶¶ 17, 19-23.) Defendant 1109-1113 Manhattan Avenue Partners, LLC filed an Answer on December 4, 2013. (Answer (Dkt. 3).) Defendant San Diego Laundromat has failed to appear in the action. (Def.'s 56.1 ¶ 14; Pl.'s 56.1 ¶ 14.) Discovery was complete as of November 25, 2014. (Nov. 25, 2014, Order.) On April 22, 2015, Defendant moved for summary judgment. (Def.'s Mot.) Defendant argues that because the wooden ramp that Plaintiff "fell on was an open and obvious condition, as a matter of law, and not inherently dangerous," it is entitled to summary judgment and Plaintiff's Complaint should be dismissed with prejudice. (Mem. of Law in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mem.") (Dkt. 23) at 11, 16.)

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). No genuine dispute of material fact exists if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the court "is required to construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in its favor." Trammell

v. Keane, 338 F.3d 155, 161 (2d Cir. 2003); see also Anderson, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

The moving party bears the initial burden to show an absence of genuine factual dispute. See Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). Summary judgment will be granted if the opposing party then "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To defeat summary judgment, the opposing party must do more than demonstrate "some metaphysical doubt as to the material facts," Matsushita, 475 U.S. at 586, and may not rely on "conclusory allegations," Twin Labs., Inc. v. Weider Health & Fitness, 900 F.2d 566, 568 (2d Cir. 1990).

### B.     Open and Obvious Condition

Under New York law, "landowners owe people on their property a duty of reasonable care under the circumstances to maintain their property in a safe condition." Tagle v. Jakob, 763 N.E.2d 107, 108-09 (N.Y. 2001). This duty includes "a safe means of ingress and egress." Etminan v. Esposito, 6 N.Y.S.3d 103, 104 (App. Div. 2015) (internal quotation marks and citation omitted). However, "a landowner has no duty to warn of an open and obvious danger." Tagle, 763 N.E.2d at 109-10. "For a condition to be open and obvious as a matter of law, it must be one that could not be overlooked by any observer reasonably using his or her ordinary senses." Garrido v. City of New York, 779 N.Y.S.2d 208, 209 (App. Div. 2004); see also Chaney v. Starbucks Corp., --- F.Supp.3d ---, No. 14-CV-7013 (PAE), 2015 WL 3883251, at *3 (S.D.N.Y. June 23, 2015); Glassberg v. Staples, No. 08-CV-2132 (KAM) (JMA), 2010 WL 3924682, at *3 (E.D.N.Y. Sept. 13, 2010).

4

The Second Circuit and New York courts have recognized that the fact that an allegedly hazardous, defective, or dangerous condition may be open and obvious does not in and of itself bar liability. Even if a court were to find that "the claimed hazard . . . was open and obvious as a matter of law, [the defendant] would still [not be entitled to] summary judgment [where the] plaintiff is not claiming a violation of the duty to warn, but a violation of the broader duty to maintain the premises in a reasonable safe condition." Westbrook v. WR Activities-Cabrera Mkts., 773 N.Y.S.2d 38, 42 (App. Div. 2004); see also Boutsis v. Home Depot, 371 F. App'x 142, 144 (2d Cir. 2010) (summary order) ("However, even if the danger of this action were open and obvious, this merely eliminates the property owner's duty to warn and does not eliminate its duty to maintain its premises in a reasonably safe condition.").

All four Departments of the Appellate Division have rejected the proposition that a landowner is completely insulated from liability because an allegedly dangerous condition is open and obvious. The First Department has recognized that the duty to warn and the duty to maintain the premises in a reasonably safe condition are "analytically distinct" and that liability may be found "even where the obviousness of the risk negates any duty to warn." Cohen v. Shopwell, Inc., 765 N.Y.S.2d 40, 42 (App. Div. 2003). More explicitly, the Second Department has held that "proof that a dangerous condition is open and obvious does not preclude a finding of liability against a landowner for the failure to maintain the property in a safe condition" and that any decisions to the contrary "should no longer be followed." Cupo v. Karfunkel, 767 N.Y.S.2d 40, 43 (App. Div. 2003). The Third and Fourth Departments have reached similar conclusions as well. See MacDonald v. City of Schenectady, 761 N.Y.S.2d 752, 754 (App. Div. 2003) ("[T]he open and obvious nature of an allegedly dangerous condition does not, standing alone, necessarily obviate a landowner's duty to maintain his or her property in a

5

reasonably safe condition."); Pelow v. Tri-Main Dev., 757 N.Y.S.2d 653, 655 (App. Div. 2003) ("Contrary to defendant's contention, the fact that the slippery condition may have been open and obvious does not entitle defendant to summary judgment dismissing the complaint. The issue whether a condition was readily observable impacts on plaintiff's comparative negligence and does not negate defendant's duty to keep the premises reasonably safe.").

Similarly, several district courts have recognized that the "open and obvious nature of [a] hazard" does not relieve a party from liability, but rather goes to "Plaintiff's comparative negligence." Kamnaut v. Delta Air Lines, Inc., No. 12-CV-4873 (SLT) (JO), 2014 WL 7342626, at *3 (E.D.N.Y. Dec. 23, 2014); see also Khalil-Mirhom v. Kmart Corp., No. 12-CV-5512 (ARR) (VVP), 2014 WL 173415, at *9 (E.D.N.Y. Jan. 13, 2014); O'Neill v. United States, No. 05-CV-188 (FJS) (GHL), 2009 WL 425824, at *2 (N.D.N.Y. Feb. 19, 2009). One court in this district noted that Cupo "clarified" the open and obvious doctrine by holding "that the open and obvious nature of an allegedly dangerous condition is relevant to the issue of the comparative fault of the plaintiff and does not preclude a finding of liability against the landowner." Habecker v. KFC U.S. Props., Inc., 928 F. Supp. 2d 648, 655 (E.D.N.Y. 2013) (internal quotation marks and citation omitted). Likewise, in interpreting how the open and obvious nature of a dangerous condition factors into potential liability, the Second Circuit has noted that the Restatement (Second) of Torts § 343A and the majority of other jurisdictions "hold that the open and obvious nature of a dangerous condition on its property does not relieve a landowner from a duty of care where harm from an open and obvious hazard is readily foreseeable by the landowner and the landowner has reason to know that the visitor might not expect or be distracted from observing the hazard." Michalski v. Home Depot, Inc., 225 F.3d 113, 121 (2d Cir. 2000).

Courts have also recognized that the inquiry into whether a condition is open and obvious "cannot be divorced from the surrounding circumstances," and that an ordinarily apparent condition "may be rendered a trap for the unwary where the condition is obscured by crowds or the plaintiff's attention is otherwise distracted." Mauriello v. Port Auth. of N.Y. and N.J., 779 N.Y.S.2d 199, 200 (App. Div. 2004); see also Nipon v. Yale Club of N.Y. City, No. 13-CV-1414 (HBP), 2014 WL 6466991, at *6 (S.D.N.Y. Nov. 18, 2014) ("Under New York law, 'even visible hazards do not necessarily qualify as open and obvious because the nature or location of some hazards . . . make them likely to be overlooked.'" (quoting Saretsky v. 85 Kenmare Realty Corp., 924 N.Y.S.2d 32, 34 (App. Div. 2011))); Khalil-Mirhom, 2014 WL 173415, at *9 (an open and obvious condition "nonetheless may be dangerous under the circumstances"); Juoniene v. H.R.H. Constr. Corp., 774 N.Y.S.2d 525, 526-27 (App. Div. 2004) ("Some visible hazards, because of their nature or location, are likely to be overlooked . . . .").

C.  **Inherently Dangerous Condition**

The open and obvious nature of a condition is only part of the inquiry. To establish liability in a trip-and-fall case, "there must be evidence that a dangerous or defective condition existed, and that the defendant either created the condition or had actual or constructive notice of it." Dennehy-Murphy v. Nor-Topia Serv. Ctr., Inc., 876 N.Y.S.2d 512, 513 (App. Div. 2009). Therefore, a court is not precluded from granting summary judgment where a condition was both open and obvious and not inherently dangerous. Cupo, 767 N.Y.S.2d at 43. In Cupo, the Second Department further clarified that "[i]n holding that the open and obvious nature of a condition is relevant to the issue of the plaintiff's comparative negligence, we emphasize that this will be an issue only in cases where it can reasonably be argued that a dangerous condition existed on the property which the landowner was under a duty to remedy." Id.

"[W]hether a dangerous or defective condition exists on the property of another so as to create liability depends on the peculiar facts and circumstances of each case and is generally a question of fact for the jury." Trincere v. County of Suffolk, 688 N.E.2d 489, 490 (N.Y 1997) (internal quotation marks and citations omitted); see also Michalski, 225 F.3d at 121. Although the inquiry is generally a question of fact for the jury, a court may conclude that no issue of fact has been presented after examining the "width, depth, elevation, irregularity and appearance of the defect along with the 'time, place and circumstance' of the injury." Trincere, 688 N.E.2d at 490 (quoting Caldwell v. Village of Island Park, 107 N.E.2d 441, 443 (N.Y. 1952)). Otherwise, when "assessing inherent dangerousness, the Court may consider factors including the inherent nature of the condition at issue, evidence of prior accidents, whether there is a statutory violation, the frequency of inspections, photographs depicting the condition, and expert testimony." Chaney, 2015 WL 3883251, at *4. The Court of Appeals has held that "there is no 'minimal dimension test' or per se rule that a defect must be of a certain minimum height or depth in order to be actionable." Trincere, 688 N.E.2d at 490.

## III.  DISCUSSION

### A.  Open and Obvious Condition

Defendant points out that a condition is generally deemed open and obvious "where the condition could easily have been observed by the plaintiff through the reasonable use of his or her senses . . . ." (Def.'s Mem. at 8.) However, considering the circumstances presented in the record and construing the evidence in the light most favorable to Plaintiff, patrons of the Laundromat may have had the ordinary use of their senses obscured or distracted by carrying large bags of laundry in and out of the building.

8

As stated above, New York courts and district courts in this circuit have recognized that a condition that might otherwise be ordinarily observable can be overlooked because of its nature or location. Nipon, 2014 WL 6466991, at *6; Khalil-Mirhom, 2014 WL 173415, at *9; Juoniene, 774 N.Y.S.2d at 526-27. Plaintiff does not recall ever having seen the wooden ramp. (Def.'s 56.1 ¶¶ 6, 9; Pl.'s 56.1 ¶¶ 6, 9.) As a long-time customer of the Laundromat who had never seen the ramp and did not see it as she entered, Plaintiff may have had no reason to anticipate that the wooden ramp would be there when she exited. Furthermore, Plaintiff's ability to see the ramp was obscured by the large laundry bag she was carrying, (Def.'s 56.1 ¶ 6; Pl.'s 56.1 ¶ 6), a foreseeable characteristic presumably shared by many of the Laundromat's customers. Thus the record presents a question as to whether or not the wooden ramp was open and obvious given the circumstances.

Regardless, while "a court may determine that a risk was open and obvious as a matter of law when the established facts compel such a conclusion," Tagle, 763 N.E.2d at 110, the facts in this case do not compel such a conclusion. Plaintiff has raised a triable issue of fact as to whether the wooden ramp was open and obvious due to its nature and location. Even if the court were to accept Defendant's contention that the presence of the wooden ramp was an open and obvious condition, granting summary judgment on those grounds alone would be inconsistent with New York law. Westbrook, 773 N.Y.S.2d at 42 ("Even if we agreed that the claimed hazard here was open and obvious as a matter of law, we would still deny summary judgment, since plaintiff is not claiming a violation of the duty to warn, but a violation of the broader duty to maintain the premises in a reasonably safe condition."); Pelow, 757 N.Y.S.2d at 655 ("Contrary to defendant's contention, the fact that the slippery condition may have been open and obvious does not entitle defendant to summary judgment dismissing the complaint.");

MacDonald, 761 N.Y.S.2d at 754 ("[T]he open and obvious nature of an allegedly dangerous condition does not, standing alone, necessarily obviate a landowner's duty to maintain his or her property in a reasonably safe condition."). Summary judgment would only be appropriate if the court could also conclude that the wooden ramp was not inherently dangerous. Cupo, 767 N.Y.S.2d at 43 ("In holding that the open and obvious nature of a condition is relevant to the issue of the plaintiff's comparative negligence, we emphasize that this will be an issue only in cases where it can reasonably be argued that a dangerous condition existed on the property which the landowner was under a duty to remedy.").

### B. Inherently Dangerous Condition

Defendant next argues that the wooden ramp was not inherently dangerous. (Def.'s Mem. at 11.) Defendant is correct that the court's inquiry does not end with whether or not a condition was open and obvious. However, when viewing the evidence in the light most favorable to Plaintiff and drawing all justifiable inferences in her favor, the court finds that Defendant has failed to eliminate all triable issues of fact as to whether or not the wooden ramp was inherently dangerous.

Defendant has acknowledged that the wooden ramp was "makeshift" and "portable" and that, while the managing member of 1109-1113 Manhattan Partners, LLC was aware of the ramp, he made no effort to address its existence. (Def.'s 56.1 ¶ 13; Pl.'s 56.1 ¶ 13.) Furthermore, Plaintiff testified that she did not believe that the ramp was affixed to the ground, and Defendant does not make any suggestion to the contrary. (Def.'s 56.1 ¶ 8; Pl.'s 56.1 ¶ 8.) The loose, makeshift ramp was approximately two feet wide, about half the width of the concrete landing. (Def.'s 56.1 ¶ 3, 8; Pl.'s 56.1 ¶ 3, 8.) The ramp itself appeared to be partially covered by a dark material that was peeling at the edges, as shown in Defendant's Exhibit A (Decl. of

10

Nicole McCord (Dkt. 24), Ex. A (Dkt. 24-8)), and identified by Plaintiff as a fair and accurate depiction of the ramp on the day of the accident (Def.'s 56.1 ¶ 10; Pl.'s 56.1 ¶ 10).

When Defendant's expert visited the property, the wooden ramp was being "stored within the entry platform area" (Def.'s 56.1 ¶ 15; Pl.'s 56.1 ¶ 15), although Plaintiff does not recall seeing the ramp immediately prior to her accident, nor does she recall ever seeing the ramp in the approximately two years that she was a customer and nearby resident (Def.'s 56.1 ¶ 9; Pl.'s 56.1 ¶ 9). A reasonable jury could find that the sporadic and unpredictable placement of the wooden ramp contributed to its potential danger to patrons of the Laundromat.

Defendant also argues that the wooden ramp was not inherently dangerous as there "was simply nothing defective with the ramp itself." (Def.'s Mem. at 14.) Whether or not the wooden ramp itself contained any defects does not change the court's conclusion. New York courts have repeatedly found that summary judgment is not appropriate in cases where it was alleged that the placement of an object created a dangerous condition, regardless of whether or not the object itself was defective. See, e.g., Cooper v. Am. Carpet and Restoration Servs., Inc., 895 N.Y.S.2d 96, 97 (App. Div. 2010) (defendant failed to establish that a hose placed on a ramp was not inherently dangerous); Belogolovkin v. 1100-1114 Kings Highway LLC, 825 N.Y.S.2d 543, 544 (App. Div. 2006) (whether placement of shopping basket on floor created a dangerous condition was a triable issue of fact); Westbrook, 773 N.Y.S.2d at 43-44 (unopened cardboard box placed on the floor of a shopping market aisle constituted a "tripping hazard" that the property owner had a duty to remedy).

Upon a review of the record, the court is unable to conclude that the wooden ramp was not inherently dangerous as a matter of law. There is no "minimal dimension test" and the court's examination of the "width, depth, elevation, irregularity and appearance of the defect

along with the time, place and circumstance of the injury" demonstrates a triable issue of fact. Trincere, 688 N.E.2d at 490 (internal quotation marks and citation omitted). Considering the placement of the ramp, that the ramp was not fixed to the ground, that it took up about half the width of the concrete step, that it was not always used, and that it was only partially covered by the dark material, Plaintiff has raised a genuine issue of material fact concerning whether the ramp was inherently dangerous.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is DENIED. The parties are directed to contact Magistrate Judge Scanlon's chambers to schedule the filing of a Joint Pretrial Order in accordance with this court's Individual Rules.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
October __, 2015

NICHOLAS G. GARAUFIS
United States District Judge